IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

JEFFREY KRETCHMER,              §
                               §
                Plaintiff,      §
                               § Civil Action No. 3:07-CV-1068-D
VS.                            §
                               §
EVEDEN, INC.,                  §
                               §
                Defendant.     §

MEMORANDUM OPINION
AND ORDER

Plaintiff Jeffrey Kretchmer ("Kretchmer") sues his former employer, defendant Eveden, Inc. ("Eveden"), alleging that it discriminated against him based on his Jewish religion and male sex, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and based on his age, in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.*, and that it violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681-1681u. Eveden moves for summary judgment. For the reasons that follow, the court grants the motion and dismisses this case.

I

Kretchmer began his employment in 1998 as an account executive ("AE") with Revelation Bra Company ("Revelation"), a women's lingerie and swimwear company, and continued his employment with Eveden after it acquired Revelation in 2002.[1]  As an AE, Kretchmer

_____

[1]The court recounts the evidence in a light favorable to Kretchmer as the summary judgment nonmovant and draws all

was responsible for representing and selling Eveden's lines of products in his sales territory.

At the time Revelation was acquired, Gustavo Fernandez ("Fernandez") was hired as Vice President of Sales and Marketing. Fernandez directly supervised the AEs, many of whom, like Kretchmer, had been Revelation employees. Fernandez held this position until Leslie Kimball ("Kimball") succeeded him in 2005. Prior to her promotion, Kimball had worked as an AE under Fernandez, and she had been responsible for servicing the major accounts of Neiman Marcus and J.C. Penney. As Vice President of Sales and Marketing, Kimball managed a team of approximately ten AEs throughout the United States, including Kretchmer. Kimball accompanied the AEs to meetings with customers and prospective customers, examined the AEs' reports, analyzed the AEs' business, counseled the AEs on how to increase their business opportunities, and communicated with them weekly. During the time Kimball held the position, she was the person most familiar with how the AEs were performing and functioning in the United States.

In 2006 Eveden decided to realign the territories so that major accounts would be serviced by AEs in the territory in which the accounts were located. This meant that Kretchmer, as the AE

---

reasonable inferences in his favor. *E.g., U.S. Bank Nat'l Ass'n v. Safeguard Ins. Co.*, 422 F.Supp.2d 698, 701 n.2 (N.D. Tex. 2006) (Fitzwater, J.) (citing *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000)).

located in the Dallas area, would have to handle two of Eveden's major accounts in that area—J.C. Penney and Neiman Marcus. While deciding to realign the sales territories, Kimball, along with Rick Alexander, Eveden's President, and Tracey Lewis, Eveden Group Ltd.'s Chief Executive Officer, decided to terminate Kretchmer and another AE, Jackie Gounnais. Anthony Thwaites ("Thwaites"), Eveden Group Ltd.'s Chairman, also became involved in the discussions to terminate Kretchmer during larger considerations of how the territories would be realigned and who would be servicing the territories.[2]

On September 12, 2006, after the plans to realign the territories were confirmed, Kimball and Jim West, Eveden's Director of Marketing and Support, traveled to Dallas to inform Kretchmer of the company's decision to terminate him. During their meeting, Kimball identified at least two reasons[3] for the termination: (1)

---

[2]The summary judgment record is undisputed that Thwaites is an Orthodox Jew and that he strictly adheres to the laws and commandments of the Jewish faith. D. App. 3. Thwaites had ultimate authority over the decision to discharge Kretchmer. *See id.*

[3]The number of reasons initially identified in the September 12 meeting is disputed. Although Kretchmer contends, and an October 24, 2006 letter from Eveden's counsel to Kretchmer's counsel states, that Kretchmer "was given two reasons for his termination on September 12, 2006," P. App. 44, Kimball testified in her deposition that there were four reasons for the termination: (1) territory realignment; (2) Kretchmer's lack of travel; (3) his lack of aggressiveness in the territory; and (4) his inability to analyze major account business. D. App. 75. ("Q. What were the reasons . . . you decided to terminate the employment of Jeff Kretchmer? A. Territory realignment, his lack of travel, his lack

Kretchmer's territory had been restructured to include Neiman Marcus and J.C. Penney, and both of those accounts had made comments in the past to company management that they did not wish to deal with Kretchmer as a sales representative; and (2) Kretchmer had not sufficiently traveled his territory, meaning that he had not actually called on accounts as often as the company wanted him to.

Kretchmer filed a discrimination complaint against Eveden with the Equal Employment Opportunity Commission ("EEOC"), which issued a right to sue letter.  Kretchmer then filed this lawsuit, alleging that Eveden had terminated him based on his age, religion, and/or sex, and that Eveden had violated the FCRA by failing to report to Kretchmer the statements that J.C. Penney and Neiman Marcus allegedly made about him and on which Eveden relied in deciding to terminate him.

Eveden moves for summary judgment, contending that Kretchmer cannot establish a prima facie case of discrimination because the summary judgment evidence establishes that Kretchmer was not qualified for the AE position, and, alternatively, even if he is

─────────────────

of aggressiveness in the territory, and his inability we felt to be able to analyze a major account business."). Kimball also testified that she told Kretchmer that the employees at J.C. Penney and Neiman Marcus specifically mentioned that they did not want to work with him. *Id.* at 79 ("Q. Did you specifically mention [at the September 12, 2006 meeting] that persons at J.C. Penney and Neiman Marcus said that they did not want to work with him [Kretchmer]? A. Yes.").

found to have been qualified and establishes a prima facie case of discrimination, the summary judgment evidence establishes Eveden's legitimate, nondiscriminatory reasons for discharging him, and there is no evidence of pretext or mixed motive.  Eveden contends that it is entitled to summary judgment dismissing Kretchmer's FCRA claim because, *inter alia*, neither J.C. Penney nor Neiman Marcus is a credit report agency under the FCRA.

## II

Title VII makes it unlawful for an employer to discriminate against an employee on the basis of his sex and/or religion.  *See* 42 U.S.C. § 2000e-2(a)(1).  The ADEA makes it unlawful for an employer "to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."  29 U.S.C. § 623(a)(1).

To prove his discrimination claims against Eveden, Kretchmer may rely on direct or circumstantial evidence.  *See, e.g., Machinchick v. PB Power, Inc.,* 398 F.3d 345, 350 (5th Cir. 2005) (addressing age discrimination) ("We have traditionally bifurcated ADEA cases into distinct groups: those in which the plaintiff relies upon direct evidence to establish his case of age discrimination, and those in which the plaintiff relies upon purely circumstantial evidence.").  "Direct evidence is evidence that, if believed, proves the fact of discriminatory animus without

inference or presumption." *Sandstad v. CB Richard Ellis, Inc.,* 309 F.3d 893, 897 (5th Cir. 2002). Such evidence of discrimination, however, is rare. *See, e.g., Rutherford v. Harris County, Tex.,* 197 F.3d 173, 180 n. 4 (5th Cir. 1999) (Fitzwater, J.) (stating that because direct evidence is rare in discrimination case, plaintiff must ordinarily use circumstantial evidence to satisfy her burden of persuasion). If direct evidence is unavailable, the plaintiff may create an inference of discrimination by using the burden-shifting framework of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). *McDonnell Douglas* applies to ADEA and Title VII discrimination claims when they are based on circumstantial evidence. *See, e.g., West v. Nabors Drilling USA, Inc.,* 330 F.3d 379, 384 (5th Cir. 2003) (Fitzwater, J.) (age discrimination under ADEA); *Evans v. City of Houston,* 246 F.3d 344, 348 (5th Cir. 2001) (Title VII claim).

As modified by the Fifth Circuit in *Rachid v. Jack in the Box, Inc.,* 376 F.3d 305 (5th Cir. 2004),[4] *McDonnell Douglas* consists of three stages. Kretchmer must first establish a prima facie case of discrimination, which, if shown, raises an inference of unlawful

---

[4]After the Supreme Court decided *Desert Palace, Inc. v. Costa,* 539 U.S. 90 (2003) (holding that direct evidence of discrimination is not required to prove employment discrimination in mixed-motive cases under Title VII), *Rachid* merged the *McDonnell Douglas* (the "pretext" method) and *Price Waterhouse* (mixed-motives method) approaches into a single, integrated formulation called the "modified *McDonnell Douglas* approach" that applies to both Title VII and ADEA claims. *Rachid*, 376 F.3d at 312.

discrimination. *See St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506 (1993).   The burden then shifts to Eveden to articulate a legitimate, nondiscriminatory reason for discharging him. *See id.* at 506-07.   Eveden's burden is one of production, not proof, and involves no credibility assessments. *See, e.g., West,* 330 F.3d at 384-85.   Finally, if Eveden meets its production burden, then Kretchmer may proceed under one of two alternatives: the pretext alternative or the mixed-motives alternative. *See Rachid,* 376 F.3d at 312.   Under the pretext alternative, Kretchmer must "offer sufficient evidence to create a genuine issue of material fact . . . that [Eveden's] reason is not true, but is instead a pretext for discrimination." *Id.* (internal quotations omitted).   Under the mixed-motives alternative, Kretchmer must offer sufficient evidence to create a genuine issue of material fact "that [Eveden's] reason, while true, is only one of the reasons for its conduct, and another motivating factor is [Kretchmer's] protected characteristic[.]" *Id.* (internal quotations omitted).

                                III

     Eveden argues as a threshold matter that Kretchmer failed to satisfy the procedural requirement of exhausting his sex discrimination claim before the EEOC.

A

It is well settled that courts may not entertain claims brought under Title VII as to which an aggrieved party has not first exhausted his administrative remedies by filing a charge of discrimination with the EEOC. *See Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378-79 (5th Cir. 2002) ("Employment discrimination plaintiffs must exhaust administrative remedies before pursuing claims in federal court.  Exhaustion occurs when the plaintiff files a timely charge with the EEOC and receives a statutory notice of right to sue."); *Bernard v. ATC VanCom*, 2005 WL 139110, at *2 (N.D. Tex. Jan. 20, 2005) (Fitzwater, J.) (dismissing claims for race, color, and age discrimination for failure to exhaust administrative remedies).  "This requirement serves the dual purposes of affording the EEOC and the employer an opportunity to settle the dispute through conciliation, and giving the employer some warning as to the conduct about which the employee is aggrieved."  *Hayes v. MBNA Tech., Inc.*, 2004 WL 1283965, at *3 (N.D. Tex. June 9, 2004) (Fitzwater, J.) (citing *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 44 (1974) and *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970)).

"The lawsuit that follows [a timely charge with the EEOC] is limited in scope to the EEOC investigation that could reasonably be expected to grow out of the charge of discrimination." *Id.* (citing *Young v. City of Houston, Tex.*, 906 F.2d 177, 179 (5th Cir. 1990)).

"In other words, the complaint may encompass any kind of discrimination 'like or related to' allegations contained in the EEOC charge." *Id.* (quoting *Sanchez,* 431 F.2d at 466). This test strikes a balance between two competing Title VII policies.

> On the one hand, because the provisions of Title VII were not designed for the sophisticated, and because most complaints are initiated pro se, the scope of an EEOC complaint should be construed liberally. On the other hand, a primary purpose of Title VII is to trigger the investigatory and conciliatory procedures of the EEOC, in [an] attempt to achieve non-judicial resolution of employment discrimination claims. Indeed, a less exacting rule would also circumvent the statutory scheme, since Title VII clearly contemplates that no issue will be the subject of a civil action until the EEOC has first had the opportunity to attempt to obtain voluntary compliance.

*Pacheco v. Mineta,* 448 F.3d 783, 788-89 (5th Cir. 2006) (internal quotation marks, citations, emphasis, and brackets omitted).

Eveden contends that Kretchmer failed to allege his sex discrimination claim before the EEOC in part because, unlike "age" and "religion," "sex" was not checked as a basis of discrimination on the official charge form (EEOC Form 5, Charge of Discrimination).

Kretchmer's failure to check the "sex" box on Form 5, however, does not of itself dictate that he failed to exhaust a Title VII sex discrimination claim. As the Fifth Circuit said in *Pacheco:*

> [t]o be clear, we do not require that a Title-
> VII plaintiff check a certain box or recite a
> specific incantation to exhaust his or her
> administrative remedies before the proper
> agency.  Nor do we require, for purposes of
> exhaustion, that a plaintiff allege a prima
> facie case before the EEOC.  Instead, the
> plaintiff's administrative charge will be read
> somewhat broadly, in fact-specific inquiry
> into what EEOC investigations it can
> reasonably be expected to trigger.

*Id.* at 792 (citations omitted).  Moreover,

> when determining whether a claim has been
> exhausted, the decision is to be based on the
> four corners of the EEOC charge, but the court
> may also consult related documents, such as a
> plaintiff's affidavit, her response to the
> EEOC questionnaire, and attachments to the
> response, when (1) the facts set out in the
> document are a reasonable consequence of a
> claim set forth in the EEOC charge, and (2)
> *the employer had actual knowledge of the
> contents of the document during the course of
> the EEOC investigation.*

*Hayes,* 2004 WL 1283965, at *6 (emphasis added).

### B

Although neither party has included a copy of Kretchmer's

official Form 5 charge of discrimination in the summary judgment

record,[5] Kretchmer concedes that "sex" was not checked on Form 5 as

a basis of discrimination.  *See* P. Br. 8-9 (asserting that "the

---

[5]Eveden has produced as summary judgment evidence a draft copy
of Form 5 that was sent to Kretchmer with the request that he
review and revise it as necessary, sign it, and return it to the
EEOC.  *See* D. App. 279.  Eveden did not include a revised and
signed copy of the draft.

EEOC failed to check the right box on the form.").[6]  Eveden also notes, and Kretchmer does not dispute, that after Kretchmer reviewed and revised the EEOC charge, the discrimination narrative in the EEOC charge stated: "I believe I have been discriminated against because of my religion, Jewish, in violation of Title VII of the Civil Rights Act of 1964, as amended and because of my age, 57, (DOB - 9/26/1948), in violation of the Age Discrimination Employment Act of 1967 as amended."  D. Br. 43-44.  Therefore, based on the information presented to this court about the contents of the Form 5 charge, the court concludes that an EEOC investigation related to sex discrimination could not reasonably be expected to grow out of the allegations of discrimination contained in the EEOC charge.  This is not simply a case involving the mere failure to check a box.  So far as the court can tell, none of the factual allegations in Form 5 relates to a charge of sex discrimination.  The EEOC charge complains of age discrimination and religious discrimination.  Because "the facts considered in an investigation of those claims would be different from those considered in a claim for [sex discrimination]," Kretchmer's claim of sex discrimination is "not a reasonable consequence of the claims set forth in his EEOC charge."  *See Haynes,* 2004 WL 1283965, at *5.

---

[6]Moreover, in the notice the EEOC sent to Eveden to notify it of the charges against it, only "age" and "religion" were marked as circumstances of the alleged discrimination.  D. App. 269.

Moreover, even though Kretchmer's charge questionnaire states "I am 58 and was ultimately replaced by *a woman* in her 30's." P. App. 43 (emphasis added), which Kretchmer contends makes out a sex discrimination claim, Kretchmer has failed to present any evidence that Eveden had notice of these filings or their contents. Accordingly, the court cannot consider these documents in construing the scope of Kretchmer's EEOC charge. *See Evenson v. Sprint/United Mgmt. Co.,* 2008 WL 4107524, at *3 (N.D. Tex. Aug. 21, 2008) (Fitzwater, C.J.) (holding that EEOC charge could not be construed in light of charge questionnaire, intake questionnaire, and layoff questionnaire, even though all clearly alleged sex discrimination, because plaintiff had failed to present any evidence that employer had notice of contents of those filings); *Kelly v. Capital One Auto Fin.,* 2008 WL 2653202, at *4 (N.D. Tex. July 7, 2008) (Fitzwater, C.J.) (holding that EEOC charge could not be construed in light of letter filed with EEOC, in part because plaintiff did not allege that employer had notice of contents of letter).  And even if Eveden did have notice of the contents of Kretchmer's charge questionnaire, the assertion made in the questionnaire is more consistent with an assertion of an age discrimination claim, particularly given the fact that Kretchmer was asserting such a claim.  Although there is a reference in the sentence to the sex of the person who replaced him, the obvious emphasis is on the relative ages of the two.

C

Contending that the EEOC was at fault for omitting his sex discrimination claim, Kretchmer suggests that the failure to check the "sex" box on Form 5 was a simple mistake. *See* P. Br. 8-9 ("[T]he EEOC failed to check the right box on the form that it fills out after Plaintiff made his charge."). He points out that the EEOC completed Form 5 after receiving his allegations and his narrative explaining that he had been replaced by a woman. *Id.* As Eveden notes, however, Kretchmer was given an opportunity to review and revise the completed Form 5 before it was entered as the official charge. Because Kretchmer does not make the argument that he reviewed and signed the Form 5 at a time when he was proceeding *pro se*, the court does not decide whether such a mistake by a *pro se* complainant warrants an exception to *Hayes's* requirement that the employer receive notice. Moreover, even if the court construed the EEOC charge in light of the charge questionnaire, the EEOC could not reasonably be expected to investigate a sex discrimination claim based solely on Kretchmer's statement that "[he is] 58, and was ultimately replaced by a woman in her 30's." P. App. 43.[7]

---

[7]The entirety of Kretchmer's handwritten narrative states:

> I worked for the company for 8 years and on 9/12/06 was told that I was being discharged, without warning, without documentation, and without a time frame to correct any problems because "they were realigning the territory

Because Kretchmer failed to exhaust his administrative remedies as to his sex discrimination claim, the court dismisses the claim.

IV

The court now turns to Kretchmer's claims for discrimination based on age and religion.

A

Because Kretchmer does not offer direct evidence of discrimination, he must proceed under the modified *McDonnell-Douglas* approach. To establish a prima facie case of discriminatory discharge under Title VII, Kretchmer must show that he (1) is a member of a protected class, (2) was qualified for the position, (3) was subject to an adverse employment action, and (4) was replaced by someone outside the protected class, or, in the case of disparate treatment, show that other similarly-situated

---

and 2 key accounts didn't want to work with me" and "I didn't travel my territory." I am 58 and was ultimately replaced by a woman in her 30's and I am Jewish. When I joined the company of, I believe 75 employees, I believe there were 13 practicing Jews and now I believe there is one. I did travel my territory, I had salary performance based increases every year and made quotas and bonuses every year, including the last. I never worked with the people at the 2 key accounts they're referring to and I believe the reasons given for my termination were nothing more than a pretext.

P. App. 43.

employees were treated more favorably.  *Bryan v. McKinsey & Co.*, 375 F.3d 358, 360 (5th Cir. 2004) (addressing discharge-based § 1981 claims); *see also Wheeler v. BL Dev. Corp.*, 415 F.3d 399, 405 (5th Cir. 2005).  In an age discrimination discharge case, "[t]he plaintiff must prove that: 1) he was discharged; 2) he was qualified for his position; 3) he was within the protected class; and 4) he was replaced by someone outside the protected class, someone younger, or was otherwise discharged because of his age." *Brown v. CSC Logic, Inc.*, 82 F.3d 651, 654 (5th Cir. 1996) (footnote omitted).  A plaintiff need only make a minimal showing to satisfy his evidentiary burden in establishing his prima facie case.  *See St. Mary's Honor Ctr.*, 509 U.S. at 515 ("Quite obviously, however, what is required to establish the *McDonnell Douglas* prima facie case is infinitely less than what a directed verdict [for plaintiff] demands."); *Tex. Dep't of Comty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981) ("The burden of establishing a prima facie case of disparate treatment is not onerous."); *Bauer v. Albemarle Corp.*, 169 F.3d 962, 967 (5th Cir. 1999) ("Only a minimal showing is necessary to meet this burden").

                                B

    Eveden does not dispute that Kretchmer is a member of a protected class, was discharged, and ultimately was replaced by someone outside the protected class.  Eveden does argue, however, that Kretchmer cannot make out his prima facie case because he was

- 15 -

not qualified for the Dallas AE position.

Following Eveden's decision to realign the sales territories in 2006, Eveden knew that the AE in the Dallas area would be assigned two of the company's major accounts: J.C. Penney and Neiman Marcus.  Based on Kretchmer's performance on his only major account (Catherines Stores), Eveden concluded that Kretchmer did not have the necessary skills to handle the realigned Dallas territory.  Eveden maintains on this basis that Kretchmer was not qualified for the Dallas AE position.

Eveden's argument lacks force.  To make a prima face showing that he was qualified for his job, a plaintiff challenging his termination does not have to demonstrate that he was meeting his employer's reasonable expectations.  *Bienkowski v. Am. Airlines, Inc.*, 851 F.2d 1503, 1505 (5th Cir. 1988); *see also Berquist v. Wash. Mut. Bank,* 500 F.3d 344, 351 (5th Cir. 2007) (holding that evidence that plaintiff's supervisors were not pleased with his performance did not prove lack of qualifications at prima facie stage).  To hold otherwise would work an "unnecessary redundancy" by "[p]lacing a plaintiff's 'qualifications' in issue at both the prima facie case and pretext stages of a termination case." *Bienkowski*, 851 F.2d at 1505.  Moreover, it would allow a defendant to defeat a plaintiff's prima facie case with subjective criticisms of the plaintiff's work performance and thereby "sidestep the analytical framework consistently applied in Title VII [and ADEA]

- 16 -

cases." *Perales v. Am. Ret. Corp.*, 2005 WL 2367772, at *8 (W.D. Tex. Sept. 26, 2005); *see Lindsey v. Prive Corp.*, 987 F.2d 324, 327 (5th Cir. 1993) ("Subjective criteria should not be considered a part of the *prima facie* evaluation in summary judgment proceeding."). Therefore,

> a plaintiff challenging his termination or demotion can ordinarily establish a prima facie case of age discrimination by showing that he continued to possess the necessary qualifications for his job at the time of the adverse action. The lines of battle may then be drawn over the employer's articulated reason for its action and whether that reason is a pretext for age discrimination.

*Bienkowski*, 851 F.2d at 1506. The Fifth Circuit elaborated on "necessary qualifications" by explaining that "[b]y this we mean that plaintiff had not suffered physical disability or loss of a necessary professional license or some other occurrence that rendered him unfit for the position for which he was hired." *Id.* at n.3; *see, e.g., Salazar v. Recreational Sports & Imports Dallas, Inc.*, 2005 WL 2026173, at *3 (N.D. Tex. Aug. 22, 2005) (McBryde, J.) (holding that pregnant plaintiff was not qualified for warehouse-employee position after being placed on medical restrictions). Because there is no record evidence that Kretchmer was objectively unqualified for the position, and because Eveden maintains that its decision to terminate Kretchmer was based on its dissatisfaction with his job performance, Eveden has failed to demonstrate that Kretchmer was not qualified for the Dallas AE

position.  *See Conklin v. Senior Hous. Servs., Inc.*, 2006 WL 265513, at *3 (N.D. Tex. Feb. 3, 2006) (Solis, J.) (holding that plaintiff had made prima facie showing where defendant submitted no evidence that would show that plaintiff failed to meet objective qualifications of job, and that issue of whether she met subjective qualifications was appropriately addressed at later stages).

V

Because Kretchmer has made the required showing of a prima facie case of discrimination, the burden shifts to Eveden to articulate a legitimate, nondiscriminatory reason for terminating his employment.

Eveden has produced evidence that it terminated Kretchmer's employment for a number of reasons: (1) he failed to adequately travel throughout his territory to visit customers and prospective customers; (2) he lacked the requisite aggressiveness in his job performance; (3) he constantly failed to satisfactorily analyze the business of his major account; and (4) Eveden was realigning the sales territory and recognized that Kretchmer would not well-service the major accounts of Neiman Marcus and J.C. Penney.  These are all legitimate, nondiscriminatory reasons for discharging an employee.  *See, e.g., Carter-Thomas v. Dallas County Cmty. Coll. Dist.*, No. 3:95-CV-0546-D, slip op. at 5 (N.D. Tex. Oct. 25, 1996) (Fitzwater, J.) ("defendants have articulated a legitimate, nondiscriminatory reason—her inability to do her job

- 18 -

satisfactorily"), *aff'd*, 129 F.3d 609 (5th Cir. Oct. 8, 1997) (per curiam) (unpublished table decision).

VI

A

Because Eveden has met its burden of production, the burden shifts back to Kretchmer to show there is a genuine issue of material fact either that Eveden's reasons are not true, but are instead a pretext for discrimination, or that Eveden's reasons, while true, are only some of the reasons for its conduct, and another motivating factor was Kretchmer's age or religion.  The evidence offered to counter the employer's proffered reasons must be substantial.  *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 220 (5th Cir. 2001) (citing *Auguster v. Vermilion Parish Sch. Bd.*, 249 F.3d 400, 402 (5th Cir. 2001)).  In addition, "[t]he plaintiff must put forward evidence rebutting each of the nondiscriminatory reasons the employer articulates."  *Id.* (citation omitted); *Rutherford*, 197 F.3d at 184.

B

Electing to proceed under the pretext analysis,[8] Kretchmer argues that all of Eveden's stated reasons for his termination are a pretext for discrimination.  In particular, Kretchmer argues that the contention that he failed to adequately travel his territory is

---

[8]Throughout Kretchmer's brief, he argues that Eveden's stated reasons are pretextual.  Nowhere in his brief does he concede, even *arguendo*, that the reasons proffered by Eveden were true.

belied by the fact that he exceeded his travel budget.  Eveden does not dispute that the sum of expenses for which Kretchmer sought reimbursement exceeded the amount of money Eveden budgeted for his travel expenses; however, Eveden's complaint is that Kretchmer did not spend the money effectively to travel his territory as frequently and substantively as Eveden expected of its AEs. Kimball, Kretchmer's manager, testified that Kretchmer spent a lot of the budgeted money driving back and forth to his showroom, and that she told him the money would be better spent traveling to accounts.  *See* D. App. 55 ("I told [Kretchmer] that he spent a lot of his money, he charged the company every week to drive back and forth to his showroom, and that that money would be better spent traveling to accounts.").  Kretchmer concedes that he sought reimbursement for travel between his home and the showroom, but he argues that he did so based on "the program put in place by [Eveden's] sales manager [and Kimball's predecessor] Gus Fernandez."  P. Br. 11.[9]

---

[9]Kretchmer also contends that his travel dollars went farther than other salesmen because his son worked for Marriot Corporation and provided him with "deep" discounts at Marriot properties. Kretcher, however, provides no evidence showing that he used these discounts during his travel within the territory, how often he stayed at hotels while traveling within the territory, when and where he received these discounts, how much money he paid for the hotel stays as a result of the discounts, and how much money he would have paid had he not been afforded the discounts. Consequently, the court concludes that Kretchmer's assertion of deep hotel discounts does not create a genuine issue of material fact as to whether Kretchmer effectively used his travel budget.

Even if the court accepts, however, that Kretchmer legitimately sought reimbursement for his travel from his house to the showroom, Kretchmer still has not countered Eveden's contention that he did not travel to accounts within his territory frequently and substantively enough to meet Eveden's expectations. All Kretchmer has shown is that he exceeded his travel budget in large part because of travel to the showroom, not because of travel to his accounts. Despite having "one of the largest [travel] budgets", D. App. 66, Kretchmer did not travel his territory as much as Eveden wanted or expected of its AEs. Because Kretchmer has adduced no evidence showing that he traveled to accounts in his territory as frequently and substantively as other AEs with comparable budgets, Kretchmer has failed to create a genuine issue of material fact that Eveden's stated reason that he failed to adequately travel his territory is a pretext for discrimination.

Because Kretchmer has failed to rebut the first legitimate, nondiscriminatory reason proffered by Eveden, the court need not address Kretchmer's attempted rebuttal of the other reasons proffered by Eveden. *See Wallace*, 271 F.3d at 220 *(*"[t]he plaintiff must put forward evidence rebutting *each* of the nondiscriminatory reasons the employer articulates." (emphasis added and citations omitted)). The court accordingly grants summary judgment for Eveden on Kretchmer's age discrimination and

religion discrimination claims.[10]

VII

Kretchmer alleges that Eveden violated FCRA by failing to provide him with a written report of the comments made by J.C. Penney and Neiman Marcus concerning Kretchmer as an Eveden AE and that contributed to Eveden's decision to terminate him.  The court holds that the FCRA claim fails as a matter of law.

"The FCRA was the product of Congressional concern over abuses in the credit reporting industry."  *St. Paul Guardian Ins. Co. v. Johnson*, 884 F.2d 881, 883 (5th Cir. 1989).  "[I]t was crafted to protect an individual from inaccurate or arbitrary information in a consumer report and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner."  *Id.* (internal quotation marks, ellipses, and citations omitted).  The FCRA defines a "consumer report" as

> any written, oral, or other communication of
> any information *by a consumer reporting agency*
> bearing on a consumer's credit worthiness,
> credit standing, credit capacity, character,
> general reputation, personal characteristics,
> or mode of living which is used or expected to
> be used or collected in whole or in part for
> the purpose of serving as a factor in
> establishing the consumer's eligibility for

---

[10]In its reply brief, Eveden moves to strike parts of Kretchmer's affidavit that Kretchmer submitted in his appendix. Because the court has granted summary judgment in favor of Eveden notwithstanding the evidence to which an objection has been made, the court denies Eveden's motion as moot.

> (A) credit or insurance to be used primarily
> for personal, family, or household purposes;
> or (B) employment purposes; or (C) any other
> purpose authorized under section 1681b of this
> title.

15 U.S.C. § 1681a(d)(1) (emphasis added).  A "consumer reporting

agency" is defined as

> any person which, for monetary fees, dues, or
> on a cooperative nonprofit basis, regularly
> engages in whole or in part in the practice of
> assembling or evaluating consumer credit
> information or other information on consumers
> *for the purpose of furnishing consumer reports*
> *to third parties*, and which uses any means or
> facility of interstate commerce for the
> purpose of preparing or furnishing consumer
> reports.

15 U.S.C. § 1681a(f) (emphasis added).

Eveden points to the absence of evidence that J.C. Penney and

Neiman Marcus are consumer reporting agencies.  Kretchmer responds

that "[t]hey both are credit reporting agencies under the law as

they both issue credit cards and one even issued it to

[Kretchmer]."  P. Br. 10.  But the fact that these parties issue

credit cards does not make them consumer reporting agencies.

Retail stores that merely furnish information to consumer

reporting agencies are not themselves consumer reporting agencies.

*See, e.g., DiGianni v. Stern's*, 26 F.3d 346, 348 (2d Cir. 1994);

*Rush v. Macy's N.Y., Inc.*, 775 F.2d 1554, 1557 (11th Cir. 1985).

Consequently, Kretchmer's FCRA claim fails as a matter of

law.

*     *     *

For the reasons explained, the court grants Eveden's motion
for summary judgment and dismisses this action with prejudice by
judgment filed today.

**SO ORDERED.**

March 31, 2009.


                                    _____
                                    SIDNEY A. FITZWATER
                                    CHIEF JUDGE

- 24 -